IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION


KOBIE JOE HENSON                                                    PLAINTIFF


v.                            Civil No. 6:23-cv-06002-SOH-MEF


SHERIFF MIKE CASH;
SERGEANT JOSH LINGO (Jail Captain,
Hot Spring County Jail);
DOCTOR ELKIN;
MARK E. SMITH                                                      DEFENDANTS


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28

U.S.C. §§ 636(b)(1) and (3), the Honorable Susan O. Hickey, United States District Judge, referred

this case to the undersigned for the purpose of making a Report and Recommendation. Currently

before the Court are motions for summary judgment by Defendant Elkin (ECF No. 102) and the

Hot Springs County Defendants (Cash, Lingo and Smith) (ECF No. 106).

## I.       BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on December 19, 2023.

(ECF No. 1). It was transferred to this District on January 4, 2024. (ECF No. 5). Plaintiff filed

an Amended Complaint on February 9, 2024. (ECF No. 8). On February 10, 2024, the Court

entered an Order directing Plaintiff to submit an Amended Complaint to address deficiencies in

his Amended Complaint. (ECF No. 13). Due to several changes in Plaintiff's address, the Court

entered a second Order directing Plaintiff to submit an Amended Complaint on July 24, 2024.

(ECF No. 33). Plaintiff did so on August 2, 2024. (ECF No. 34).

Plaintiff's Second Amended Complaint centers on his incarceration in the Hot Spring County Detention Center ("HCDC"). (ECF No. 34). He alleges that on November 17, 2022, he slipped and fell in the shower.[1] (*Id*. a 4). He alleges that, because of the fall, he broke bones in his right hand and displaced metal hardware in that hand. (*Id*. at 4-6). Plaintiff alleges he was given a bag of ice but not taken to the hospital that day. (*Id*. at 5). He alleges he was seen by Dr. Elkin the day after the accident, when the doctor arrived for his weekly visit to the jail. (*Id*. at 5). Dr. Elkin allegedly cut off Plaintiff's explanation of the incident, telling him "there are only two ways to fall in a shower." (*Id*. at 6). When Plaintiff told him it did not matter how he had fallen, Dr. Elkin told him he "didn't have to talk to him like that" and walked off without any examination or treatment of his hand. (*Id*.).

Plaintiff alleges he was taken to the emergency room nine days[2] after the accident by Jailer Mark Smith, who looked at his hand and stated, "this is ridiculous, I'm taking you to the hospital emergency room." (ECF No. 34 at 6). At the emergency room, x-rays confirmed a broken bone and displaced metal hardware. A half-cast was placed on his hand and arm, a pain shot given, and pain medication and surgery prescribed. (*Id*.). Plaintiff alleges that Defendants denied him medical care, including the pain medication and surgery. (*Id*. at 4-6). Plaintiff alleges he was taken back to HCDC on November 25, 2022. (*Id*. at 6). He placed a grievance about the situation on or about November 28, 2022. (*Id*.). HCDC was then shut down due to a shortage of staff, and he was transported to Sheridan City Jail for 30 days. (*Id*. at 6-7). His pain prescription was never filled, and his surgery was never scheduled. (*Id*.). In January 2023, he was transported to the CHI St. Vincent Orthopedic Center, where the cast was removed. X-rays indicated the bone had healed, but surgery was still recommended to remove the metal hardware because it was causing Plaintiff

---

[1] A statement by a Hot Spring County Sergeant indicates that Plaintiff hit a wall in his pod after returning from his Zoom hearing. (ECF No. 106-2).
[2] The summary judgment evidence indicates it was five days.

pain. (*Id.*). It appears Plaintiff was back in HCDC at the time. The surgery appointment was never scheduled. (*Id.* at 7).

Plaintiff proceeds against all Defendants in their official and individual capacities. (ECF No. 34 at 5). For his official capacity claim, he states "denial of medical care and deliberate indifference to serious medical needs." (*Id.*). Plaintiff seeks compensatory, punitive, and other damages. (*Id.* at 11).

On April 30, 2024, the Court entered a Bench Order notifying Defendants that if they intended to raise the issue of administrative exhaustion, they must do so in a motion for summary judgment no later than July 1, 2024. (ECF No. 76). The Order also directed Defendants to file a Notice to the Court if they did not intend to pursue and exhaustion defense. (*Id.*). This Order also stayed discovery until any exhaustion issues were resolved. (*Id.*). On May 6, 2024, Defendant Elkin submitted his Notice stating that:

> Plaintiff submitted grievances regarding the issues that form the basis of his Complaint against Defendants and has exhausted his administrative remedies prior to the filing of his Complaint. Accordingly, Separate Defendant will not pursue an exhaustion motion.

(ECF No. 77).

On July 1, 2024, Defendants Cash, Lingo, and Smith submitted their Motion for Summary Judgment for Failure to Exhaust Administrative Remedies. (ECF Nos. 80, 81, 82). They argue Plaintiff submitted multiple grievances concerning the allegations in this case, but that he did not submit appeals for any of them. (*Id.*). Thus, they argue Plaintiff failed to exhaust his administrative remedies as to this claim.

On July 2, 2024, the Court entered an Order directing Plaintiff to submit his Summary Judgment Response. (ECF No. 83). When the timing of a Notice of Address Change raised doubt

as to whether Plaintiff had received the first Order, the Court entered a second Order directing him to respond.  (ECF No. 85).

Plaintiff timely filed his Summary Judgment Response on August 7, 2024.  (ECF Nos. 86, 87).  The undersigned entered a Report and Recommendation on November 13, 2024, recommending that the Motion for Summary Judgment be denied.  (ECF No. 88).  This Report and Recommendation was adopted on February 7, 2025.  (ECF No. 94).

Defendant Elkin filed his Motion for Summary Judgment on August 19, 2025.  (ECF Nos. 102, 103, 104).  He argues summary judgment in his favor is appropriate because: (1) he was not deliberately indifferent to Plaintiff's serious medical needs; (2) Plaintiff has presented no evidence of any harm to his health from any alleged denial or delay of medical care; and (3), Plaintiff has alleged no facts to support an official capacity claim.  (ECF No. 103).  Defendant Elkin notes in his Brief that Plaintiff conceded in discovery that his claims against him are limited to the period of November 17, 2022, through January 7, 2023.  (*Id*. at 2).  Review of Plaintiff's deposition testimony supports this concession.  (ECF No. 106-1 at 38).  The Court will, therefore, consider this timeframe for Plaintiff's claims.

The Hot Spring County Defendants filed their Motion for Summary Judgment on August 26, 2025.  (ECF Nos. 106, 107, 108).  They argue summary judgment in their favor is appropriate because: (1) they are entitled to qualified immunity because they did not violate Plaintiff's constitutional right to medical care; (2) Plaintiff was provided with timely medical treatment; (3) Plaintiff has no verified evidence that any delay in treatment caused or worsened his injuries; and (4), Plaintiff has not identified any Hot Spring County policy or custom which led to any injury.  (ECF No. at 107).  The Hot Spring County Defendants' Statement of Facts indicates Plaintiff's claims end against them when he was transferred to the Sheridan Detention Center in Grant County.  (ECF No. 108 at 2).

4

Plaintiff filed his Response to Defendant Elkin's motion on September 22, 2025.  (ECF Nos. 112, 113).  He repeats the allegations of his Second Amended Complaint in his Brief.  Of note, Plaintiff states Dr. Elkin walked away from him and failed to give him any treatment.  (ECF No. 112 at 1).  In his Statement of Disputed Facts, Plaintiff disputes that Hot Spring County staff were responsible for scheduling follow-up appointments.  (ECF No. 113 at ¶ 5).  He cites to his Exhibit C, which he identifies as Defendant Lingo's Interrogatory Response in support of the contention that Defendant Elkin and nurses were responsible for making appointments.[3]  (*Id*.).  Plaintiff adds additional information to the summary of his visit to CHI St. Vincent on January 13, 2023.  (*Id*. at ¶ 13).  He disputes that he was treated in a timely manner.  (*Id*. at ¶ 19).  Plaintiff disputes that Defendant Elkin responded to all his requests for medical care because he submitted requests for pain medication and never received any.  (*Id*. at ¶ 20).  Plaintiff cites to his Exhibit I, which is a grievance from the Sheridan Detention Center in Grant County.  (ECF No. 112 at 12).  This grievance is dated December 5, 2022, and indicates it was faxed to Hot Spring County.  In the grievance, Plaintiff states the Defendant Elkin refuses to fill his prescriptions or have him sent to a surgeon.  (*Id*.).  Plaintiff disputes that he was treated aggressively, pointing out the five-day delay from the time he saw Defendant Elkin until the time he was taken to the emergency room.  (*Id*. at ¶ 21).

Defendant Elkin filed a Reply on September 23, 2025.  (ECF No. 114).  He reemphasizes that Plaintiff's claim is that he waited five days starting November 18, 2022, to be seen in the emergency room, and 47 days from that date until he saw a hand specialist.  (*Id*. at 1).  He also notes that the conditions of Plaintiff's right hand were "never emergent and Plaintiff was always seen by medical personnel within a reasonable time after having requested to be seen." (*Id*.).  He

---

[3] The Court notes that it is not possible to identify the individual responding to the interrogatories, because Plaintiff only submitted one page of the interrogatory.  (ECF No. 112 at 7).

notes that Plaintiff was seen later in the ADC Omega Unit and was told that surgery would need to wait until he was released from ADC custody to obtain that surgery.[4]  (*Id.*).  He again emphasizes that Plaintiff has still presented no evidence that his overall condition was made worse by any delay in treatment.  (*Id.*).  Defendant Elkin argues that he did not take Plaintiff to the emergency room, and did not see him again until January 7, 2023.  (*Id.* at 2).  Plaintiff "never requested to see him during the interim."  (*Id.*).  Finally, Defendant Elkin argues "Plaintiff's case fails due to his lack of evidence that any imagined delay in treatment resulted in a worsening of his condition." (*Id.* at 3).

Plaintiff filed his Response to the Hot Spring County Defendants' motion on September 25, 2025.  (ECF Nos. 115, 116).  Notably, in this document, Plaintiff states that Defendant Elkin wrote orders for him to be taken to the emergency room, but he was not taken until five days later. (ECF No. 115 at 1-2).  Otherwise, he repeats the allegations of his Second Amended Complaint. In his Statement of Disputed Facts, Plaintiff's response to Defendants' paragraph 1 is not responsive to their statement, instead consisting of summary argument.  (ECF No. 116 at ¶ 1). Plaintiff appears to argue that he should have been taken to the emergency room immediately rather than waiting to see Defendant Elkin the next day.  He also argues they denied him pain medication prescribed by the emergency room.  (*Id.*).  Plaintiff states that he does not know if they signed him up to see Dr. Elkin, but he saw him on November 18, 2022.  (*Id.* at ¶ 5).

The Hot Spring County Defendants filed their Reply on October 2, 2025.  (ECF No. 117). They note that Plaintiff's statement that Dr. Elkin wrote orders for him to be taken to the emergency room contradicted his earlier deposition testimony that an unnamed non-defendant was present during his visit with Dr. Elkin, and Dr. Elkin failed to provide any treatment.  (ECF No.

---

[4] Defendant Elkins' Statement of Undisputed Facts indicates that Plaintiff failed to seek surgery once released from the Omega Unit.  (ECF No. 104 at ¶ 17).  Plaintiff does not dispute this fact. (ECF No. 113 at ¶ 17).

117 at 1). They note that Plaintiff's written complaints occurred after his transfer out of Hot Spring County. (*Id*. at 2). They emphasize that Plaintiff's Response fails to address their argument that he has presented no verifying medical evidence that any alleged delay in receiving medical treatment caused him any harm. (*Id*. at 2-3). Defendants also provided an undisputed timeline of events for the Court's illustration:

- November 17, 2022: Henson's hand is injured.

- November 18, 2022: Henson was seen by the jail's healthcare provider, Darrell Elkin.

- November 19-22, 2022: Henson submitted no written complaints to jail staff (ECF 106-1, pp. 18-19).

- November 23, 2022: Separate Defendant Mark Smith checks on Henson and takes him to the hospital (ECF 106-1, p. 18).

- November 24-28, 2022: Henson waiting for prescription to be filled (ECF 106-1, pp. 21-22.

- November 28, 2022: Henson transferred out of Hot Spring County Detention Center (ECF 106-1, p. 21; ECF 115, p. 2).

- November 29, 2022: Henson's prescription is filled.

(*Id*. at 1-2).

The Court adds the following events to the timeline:

- December 5, 2022, the Sheridan Detention Center faxes a grievance to HCDC from Plaintiff about his prescription. (ECF No. 112 at 12). It is not clear from the summary judgment record if this was received.

- January 7, 2023, Defendant Elkin sees Plaintiff at the Sheridan County Detention Center (ECF No. 104 at 3).

- January 13, 2023, Plaintiff is seen by an orthopedic surgeon at CHI St. Vincent Hospital (ECF No. 102-7).

## II.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    ANALYSIS

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted

8

with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). Despite this, issues of fact exist when there is a question of whether medical staff exercised independent medical judgment, and whether the decisions made by medical staff

fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104–05. However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]'" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub*, 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

There is no dispute that Plaintiff's injured right hand meets the objective first prong of the deliberate indifference test. Nothing in the summary judgment record, however, meets the subjective prong of the deliberate indifference test for either Defendant Elkin or the Hot Spring County Defendants. The timeline of facts in this case raises several points of denial or delay: (1) not taking Plaintiff to the emergency room on November 17, 2022, the day of the injury; (2) the five-day delay between seeing Dr. Elkin and being taken to the emergency room; (3) the delay in pain medication while still in HCDC and prior to his transfer to Sheridan Detention Center in Grant County; and (4), the lack of pain medication and orthopedic follow-up while in the Sheridan facility until January 7, 2023. The Court will address these, as well as the fact that Plaintiff has

10

produced no verifiable medical evidence to show that any delay in medical care was detrimental to the prognosis of his right hand.

Regarding the initial delay between November 17, 2022, and seeing Defendant Elkin on November 18, 2022, Plaintiff testified that his reinjured hand was not bloody, scraped or bruised. (ECF No. 106-1 at 13). Instead, he testified the only symptom was something poking up "in-between his hand." (*Id*.). This turned out to the some of the hardware from his previous surgery. (*Id*.). Plaintiff provided photographs of his hand. There is what appears to be a lump or a swollen knuckle, depending on the angle of the shot, but no gross deformity is obvious, and the skin is not broken. (ECF No. 112 at 8-9). He did not ask for pain medication. (*Id*. at 14). Thus, Plaintiff's hand did not present as an acute or escalating situation obvious to a layperson as requiring immediate medical care.

Based on the evidence in the summary judgment record, the delay between the time Plaintiff was first seen by Dr. Elkin on November 18, 2022, and the time he was taken to emergency room on November 23, 2022, was due to sloppy communication during a period of low staffing at HCDC. Defendant Elkin states that he wrote orders for Plaintiff to be taken to the emergency room and passed those to HCDC staff. (ECF No. 104-1 at 2). He further states "[a]t that time, the HCDC staff scheduled all follow-up doctor appointments, including transportation to the doctor and/or the ER for the inmates." (*Id*.). The Hot Spring County Defendants indicate they were not aware of Plaintiff's need for follow-up until Plaintiff told Defendant Smith that Elkin had not treated him. (ECF No. 107 at 4). He was transported to the emergency room that day. (*Id*.). Plaintiff's summary judgment responses mirror this confusion. In his response to Defendant Elkin's motion, Plaintiff argues the doctor provided no treatment, and cites his Exhibit C, which he identifies as Defendant Lingo's Interrogatory Response:

> 16. Was Dr. Elkin or yourself responsible for contacting a surgeon and filling Mr. Henson's pain medication.

RESPONSE: Dr. Elkin and his Nurse were responsible for managing inmate medical care.

(ECF No. 112 at 7).  In his Response to the Hot Spring County Defendants' motion, Plaintiff argues that Defendant Elkin wrote orders for him to be taken to the emergency room, but he was not taken until five days later.  (ECF No. 115 at 1-2).  Thus, the summary judgment evidence indicates that there was a breakdown in communication between Defendant Elkin and HCDC staff, including the HCDC Defendants.  Defendant Elkin believed the HCDC staff were responsible for making outside medical appointments and transporting inmates to them.  The HCDC staff, including the Hot Spring Defendants, believed Dr. Elkin and his nurse were responsible for scheduling outside consults and notifying them regarding transport.  While this miscommunication could constitute negligence, it does not rise to the level of deliberate indifference.  Additionally, as noted above, Plaintiff's hand did not present as an acute or escalating situation requiring immediate care.  Further, Plaintiff did not request pain medication during this period.  When he alerted Defendant Smith that he had not yet received care several days after seeing Dr. Elkin, he was taken to the emergency room immediately.

Next is the delay in providing Plaintiff with the pain medication prescribed by the emergency room.  Plaintiff was seen in the emergency room on November 23, 2022.  (ECF No. 104-3; ECF No. 112 at 10-11).  He was diagnosed with a closed metacarpal fracture as well as a displaced orthopedic screw with "prominence over dorsal aspect of ring finger."  (ECF No. 112 at 10).  He was noted to be tender to palpation over the hardware.  (ECF No. 112 at 10).  He was advised to rest, ice, and elevate.  (ECF No. 104-3 at 1; ECF No. 112 at 11).  Plaintiff testified that he was given a shot of Toradol for pain, but there was no indication of this in the emergency room documents submitted to the court.  (ECF No. 106-1 at 21).  He was also advised to follow up with a hand specialist.  (*Id*.).  His hand was immobilized.  (ECF No. 103 at 5; ECF No. 112 at 15).

Plaintiff was prescribed naproxen for "mild pain" for up to 10 days. (ECF No. 104-3 at 3; ECF No. 112 at 16). The prescription copy is marked in large letters "Needs Today." (ECF No. 104-4; ECF No. 112 at 16). The naproxen did not arrive at HCDC until 11/29/2022, the day after Plaintiff was transferred to Sheridan Detention Center in Grant County. The packing slip indicates it was shipped to the facility. (ECF No. 104-5). Defendant Elkin stated in his affidavit that the discharge instructions, including the prescription, were passed to jail staff. (ECF No. 104-1 at 3). There is no evidence in the summary judgment record as to when the naproxen prescription was presented to the pharmacy, who presented it, or why it was shipped instead of being picked up or delivered. Finally, there is no objective evidence in the summary judgment record that Plaintiff made any written request for pain medication during his remaining time at HCDC. It is not clear from the summary judgment record that any of the named Defendants caused the delay. Further, because Plaintiff's pain was characterized as mild and because he did not request any pain medication after returning from the emergency room, there is no evidence of deliberate indifference based on the delay in his pain medication.

While in the Sheridan facility, Plaintiff provided evidence that he did submit written complaints as to the whereabouts of his pain medication. Based on the summary judgment evidence, it appears that there was confusion as to which facility was responsible for his medical care after his transfer, but not deliberate indifference. Based in their summary judgment documents, the Hot Spring County Defendants appear to believe that their responsibility for his medical care ended with his transfer. In contrast, Plaintiff testified in his deposition that the Sheridan facility jail administrator told him that Hot Spring County was still responsible for his medical care. (ECF No. 106-1 at 22). Defendant Elkin does not specifically address this issue, but states that he did not receive any medical requests from Plaintiff between the time he saw him on November 18, 2022, and when he received a phone call from the Sheridan facility on January

7, 2023. (ECF No. 103 at 5). Defendant Elkin then immediately drove to the Sheridan facility to evaluate Plaintiff's hand. (ECF No. 104-1 at 3). He prescribed him a stronger pain medication and personally made an orthopedic appointment for Plaintiff for January 13, 2023. (*Id.*). Again, there is no evidence of deliberate indifference, only confusion and, perhaps, negligence.

Finally, Plaintiff has failed to provide any verified medical evidence that any denial or delay in treatment was detrimental to the prognosis for his hand. Plaintiff was evaluated at CHI St. Vincent Orthopedic Clinic on January 13, 2023. (ECF No. 104-7). The assessment was malunion of the metacarpal right ring finger and retained hardware for the right ring finger. (*Id.* at 2). At the same time, the imaging studies noted "[h]ealed fracture of neck of ring finger metacarpal in appropriate alignment." (*Id.*). He was permitted to advance activity as comfort allowed. He could schedule removal of the hardware prominence on the hand "at his convenience." The Court will interpret the phrase "at his convenience" to mean that the removal was non-emergent. Removal of the hardware would not correct the malunion, but osteotomy was not recommended. (*Id.*). He was further advised to avoid impact activities with his right hand. The Court also notes that at this encounter, Plaintiff reported reinjuring his right hand in an altercation, not a fall in the shower. (*Id.*). A summary letter dated the same day indicated that he could discontinue splinting, and removal of the hardware would help with the skin irritation on his right hand. (*Id.* at 3). The Court notes there is no dispute that Plaintiff had previously injured his hand while incarcerated in HCDC and had surgery to repair it, including placement of orthopedic hardware. (ECF No. 108 at 1; ECF No. 106-1 at 11). In his deposition, Plaintiff testified that he later had surgery on his hand while incarcerated in the Arkansas Division of Correction in January 2024. He testified in his deposition that he had no lingering issues with his hand other than not being able to straighten his right finger entirely. (ECF No. 106-1 at 25). Plaintiff provided no

medical evidence stating that this inability to strengthen his finger was the result of any delay in care.

In summary, while there were several points of denial or delay of medical care during the timeline of this case, none of them meets the subjective second prong of the deliberate indifference test. Instead, Plaintiff has at most shown negligence by the Defendants, and negligence is not actionable under § 1983. *See, e.g.*, *Davis v. Buchanan Cnty., Missouri*, 11 F.4th 604, 625 (8th Cir. 2021) ("a number of individual and isolated incidences of medical malpractice or negligence do not amount to deliberate indifference without some specific threat of harm from a related system wide deficiency ....") (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1245 (8th Cir. 1997) (alteration added)).

Summary judgment in favor of all Defendants is, therefore, appropriate as a matter of law.

## IV.    CONCLUSION

For the reasons and upon the authorities discussed above, it is RECOMMENDED that the Motion for Summary Judgment by Defendant Elkins (ECF No. 102), and the Motion for Summary Judgment by the Hot Springs County Defendants (Cash, Lingo and Smith) (ECF No. 106) be **GRANTED,** and that Plaintiff's Second Amended Complaint (ECF No. 34) be **DISMISSED WITH PREJUDICE.**

*Referral Status*: This case should not remain referred because all matters have been recommended for dismissal in this Report and Recommendation.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of December 2025.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE